Robert M. Warner, P.C., et al v. Tommy Lynn Lain and Sonja Gayle Lain
















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-271-CV

     ROBERT M. WARNER, P.C., ET AL,
                                                                              Appellants
     v.

     TOMMY LYNN LAIN
     AND SONJA GAYLE LAIN,
                                                                              Appellees
 

From the 249th District Court
Johnson County, Texas
Trial Court # C199900345
                                                                                                                
   
O P I N I O N
                                                                                                                
   
      NationsCredit Home Equity Services Corporation, f/k/a Portfolio Acceptance
Corporation, (“NationsCredit”) posted three tracts of land owned by Tommy Lynn and Sonja
Gail Lain for a nonjudicial foreclosure sale. The Lains obtained a temporary injunction
prohibiting NationsCredit or its attorney Robert M. Warner, P.C. from foreclosing on the
three posted properties or any other properties owned by the Lains for a period of six months. 
NationsCredit and Warner (collectively, “Appellants”) claim in three points of error that the
court erred by: (1) granting the temporary injunction because the Lains did not establish a
probable right of recovery; (2) setting only a $1,000 bond in the injunction order; and (3)
prohibiting Appellants from foreclosing upon any properties owned by the Lains which are not
part of this suit.
BACKGROUND
      The Lains executed a note for $90,000.00 payable to the First State Bank of Cleburne on
February 28, 1989. The terms of the note required thirty-five monthly payments of $1,168.27
and provided that the note would reach maturity on February 28, 1992. The Lains secured the
note with a deed of trust on a tract of land in the Grandbury Park Addition containing 1.1577
acres. The Lains executed a one-year extension of the note and deed of trust on October 5,
1992 in favor of First State Bank’s successor, Community Bank. The Lains executed a second
one-year extension on December 17, 1993 in favor of Community Bank’s successor, Cleburne
State Bank.
      The Lains executed a third extension on February 23, 1995 in favor of Cleburne State
Bank. This extension reflects that the unpaid principal balance of $77,263.09 would be paid in
179 monthly installments of $952.58 with a maturity date of February 23, 2010. Cleburne
State Bank assigned the note and lien to Portfolio Acceptance Corporation on March 3, 1995. 
Portfolio filed a name change with the Secretary of State on November 7, 1996 and began
doing business thereafter as NationsCredit.
      The Lains executed a second note for $112,000.00 payable to Community Bank on
December 27, 1989. The terms of the note required thirty-five monthly payments of
$1,382.98 and provided that the note would reach maturity on December 27, 1992. The Lains
secured the note with two deeds of trust: one on a 75.836-acre tract of land in the David King
Survey and one on Lot 2, Block 624, City of Cleburne. The Lains executed a three-year
extension of the note and deed of trust on May 27, 1993 in favor of Community Bank. Under
the terms of this extension, the parties extended the maturity date of the note to May 27, 1996. 
Community Bank’s successor, Cleburne State Bank, assigned the note and lien to Portfolio on
March 3, 1995.
      The Lains made late payments and missed payments on both notes. Apparently
NationsCredit posted the 1.1577-acre tract securing the $90,000 note (“note one”)


 for
foreclosure on July 1, 1997. However, NationsCredit canceled the foreclosure sale after the
Lains made payment arrangements. On December 18, 1997, counsel for NationsCredit sent a
demand letter to the Lains concerning note one, which states in pertinent part:
As you know, the Note matured by its own terms on December 17, 1994. Our
client’s records indicate that you are in default on the above-referenced loan. As of
this date, your default consists of your failure to timely pay the Note. The total to pay
this note, as of November 30, 1997, is $78,108.03. This amount includes a principal
balance of $72,530.64, interest of $4020.80, and corporate advances of $1429.44. In
addition, our client has incurred $119.15 in attorneys fees and title expenses as a
result of your default.
 
Demand is hereby made upon you to pay the sum of $78,108.03, plus per diem
interest of $25.18 from and after November 30, 1997, on or before twenty (20) days
from the date of this Notice, in order to cure your default.

      On March 31, 1997, NationsCredit notified the Lains by letter that their $112,000 note
(“note two”) was “past due for October 27, 1996. The total amount past due, which may
include late charges, [was] $10,477.38.” NationsCredit gave the Lains thirty days to cure the
default to avoid acceleration of the note. On December 18, 1997, counsel for NationsCredit
sent a letter to the Lains demanding payment in full of all sums due on the note, including
principal, interest, and attorney’s fees and title expenses incurred because of their default. 
NationsCredit gave the Lains twenty days to cure the default.
      The Lains filed a chapter 13 bankruptcy petition in February 1998. They filed a
bankruptcy plan the next month which required them to make a monthly payment to the
bankruptcy trustee toward: 
      •    an $8,095.40 arrearage on note one;
 
      •    a $10,477.38 arrearage on note two;
 
      •    the total principal sum ($72,530.64) due on note one; and
 
      •    the total principal amount ($87,866.81) due on note two.

The parties reached an agreed order which the bankruptcy court entered in March 1999. As to
note one, the order required the Lains to resume paying directly to NationsCredit the $952.28
monthly installments provided for in the 1995 extension agreement. The order confirms that
note one will not mature until February 23, 2010. The order also directed the trustee to pay
$12,379.64 from the sums paid under the plan from 1998 to 1999 to cure the Lains’ arrearage
on this note.
      As to note two, the bankruptcy order recites the parties’ agreement that “this loan matured
by its own terms on May 27, 1996.” The order required the Lains to pay the total amount due
under this note to NationsCredit in monthly installments of $1,116.74 under the plan. The
order further provided that, upon dismissal of the bankruptcy proceeding, the stay granted the
Lains would be lifted immediately and they must make a final balloon payment to
NationsCredit of all sums remaining unpaid on note two within thirty days.
      Tommy Lain testified that the bankruptcy was dismissed in May or June of 1999. He
made a single payment on note one to NationsCredit in May 1999. On June 1, Warner, as
counsel for NationsCredit, sent a demand letter to the Lains advising that they were then in
default on note one in the amount of $8,570.52, including principal and interest. Warner
informed the Lains that they had thirty days to cure the default or NationsCredit would
accelerate the maturity of the note and foreclose on the property.
      On July 16, 1999, Warner notified the Lains by letter that note two had matured,
demanded payment of all sums remaining due on the note, and advised that the two properties
securing the note would be sold at a nonjudicial foreclosure sale between 1:00 and 4:00 in the
afternoon on September 7. See Tex. Prop. Code Ann. § 51.002(b) (Vernon 1995). The
Lains filed an application for temporary restraining order, temporary injunction and original
petition on September 7. The trial court granted a restraining order that morning prohibiting
NationsCredit and/or Warner from proceeding with the foreclosure sale.
      Warner mailed a letter to the Lains the next day concerning note one. In this letter,
Warner advised that NationsCredit had accelerated the maturity of note one, demanded
payment of all sums remaining due on the note, and advised that the property securing the note
would be sold at a nonjudicial foreclosure sale on October 5, 1999. Id. Warner mailed a
similar letter to the Lains on September 8 scheduling an October 5 nonjudicial foreclosure sale
for the two properties securing note two. Id.
      The Lains allege in their petition that NationsCredit’s foreclosure notices are “fatally
defective” because they do not identify how NationsCredit became the holder of the notes and
because they do not tell the Lains how much is due on either note, depriving them of “a fair
opportunity to cure the arrearages.” They also allege that NationsCredit made a usurious
demand on “multiple debts not yet due.”
PROPRIETY OF TEMPORARY INJUNCTION
      Appellants contend in their first point that the Lains are not entitled to a temporary
injunction because they failed to establish a probable right of recovery at a trial on the merits.
Applicable Law
      To obtain a temporary injunction, an applicant must establish that he has a probable right
of recovery in a trial on the merits and a probable injury in the interim. Walling v. Metcalfe,
863 S.W.2d 56, 57 (Tex. 1993) (per curiam); TCA Bldg. Co. v. Northwestern Resources Co.,
890 S.W.2d 175, 179 (Tex. App.—Waco 1994, no writ). We review such an order under an
abuse-of-discretion standard. Walling, 863 S.W.2d at 58; TCA Bldg. Co., 890 S.W.2d at 179.
      A creditor charges usurious interest when it seeks “interest that exceeds the applicable
maximum amount allowed by law.” Tex. Fin. Code Ann. § 301.001(4) (Vernon 1998). A
written demand letter seeking unearned interest or an excessive rate of interest may constitute a
charge for usurious interest. See Blasdell v. Catalina, 858 S.W.2d 653, 655 (Tex.
App.—Houston [14th Dist.] 1993), rev’d on other grounds, 881 S.W.2d 295 (Tex. 1994); 
Dryden v. City Nat’l Bank, 666 S.W.2d 213, 221 (Tex. App.—San Antonio 1984, writ ref’d
n.r.e.). A letter demanding only the unpaid principal balance and unpaid interest accrued
thereto does not violate the usury statute. Rent America, Inc. v. Amarillo Nat’l Bank, 785
S.W.2d 190, 195 (Tex. App.—Amarillo 1990, writ denied); Greenland Vistas, Inc. v.
Plantation Place Assocs., 746 S.W.2d 923, 927 (Tex. App.—Fort Worth 1988, writ denied);
accord Tanner Dev. Co. v. Ferguson, 561 S.W.2d 777, 788-89 (Tex. 1977).
Analysis
      With respect to note one, the Lains claim that the demand letter mailed to them by
NationsCredit on December 18, 1997 constitutes a charge for usurious interest. On its face
however, this demand letter sought only the unpaid principal balance plus interest which had
accrued on the unpaid principal to the date of the demand letter. The letter did not demand any
unearned interest. Thus, it does not violate the usury statute. See Rent America, 785 S.W.2d
at 195; Greenland Vistas, 746 S.W.2d at 927; see also Tanner Dev. Co., 561 S.W.2d at 788-89.
      The Lains claim with respect to both notes that NationsCredit did not provide the notices
required as a prerequisite to a nonjudicial foreclosure sale, and that NationsCredit failed to
offer any evidence that it is the current holder of the notes. They assert with respect to note
two that the parties orally renewed the note.
      Section 51.002 requires only that a creditor provide the debtor notice of a nonjudicial
foreclosure sale when the debt is secured by property other than the debtor’s residence. See
Tex. Pen. Code Ann. § 51.002(b), (d) (Vernon 1995). The deeds of trust relative to notes
one and two do not require any additional notice. The parties agree that none of the properties
involved in this litigation serve as the Lains’ residence. Therefore, the foreclosure notices
mailed to the Lains by NationsCredit on June 1, 1999 with respect to note one and July 16,
1999 with respect to note two (and the subsequent notices mailed on September 8), provided
them all the notice to which they were entitled.
      NationsCredit offered in evidence written assignments of both notes from the bank to
Portfolio, which were duly recorded in the official public records of Johnson County. It
offered in evidence a certified copy of records from the Office of the Secretary of State
documenting that on November 7, 1996 Portfolio began doing business in Texas under the
name of NationsCredit. It also offered in evidence the Lains’ chapter 13 bankruptcy plan,
which they both signed, and an agreed bankruptcy order, both of which identify NationsCredit
as the holder of the notes. We conclude that this evidence sufficiently establishes
NationsCredit’s status as the holder of the notes.
      The burden of proof lies with the applicant in an injunction hearing. See Walling, 863
S.W.2d at 57; TCA Bldg. Co., 890 S.W.2d at 179. Thus, the Lains bore the burden of
proving that the parties had extended note two beyond its 1996 maturity date. Tommy Lain
testified that there was “talk of renewing the note,” but nothing was ever formalized. In
addition, the agreed bankruptcy order entered in the Lains’ case recites that this note “matured
by its own terms on May 27, 1996.” Accordingly, we conclude that the Lains failed to meet
their burden of showing an extension of the note.
      The Lains failed to show a probable right of recovery with respect to either note. 
Accordingly, the trial court abused its discretion by enjoining NationsCredit and/or Warner
from proceeding with the scheduled foreclosure sale. See Walling, 863 S.W.2d at 58; TCA
Bldg. Co., 890 S.W.2d at 179. Therefore, we sustain Appellants’ first point. Because we
have sustained Appellants’ first point and will dissolve the injunction, we need not address
their remaining points.
      We reverse the judgment and dissolve the injunction order. See InterFirst Bank San Felipe
v. Paz Constr. Co., 715 S.W.2d 640, 641 (Tex. 1986); Brittingham v. Ayala, 995 S.W.2d
199, 201 (Tex. App.—San Antonio 1999, pet. denied); Dyer v. Weedon, 769 S.W.2d 711, 715
(Tex. App.—Waco 1989, no writ).
 
                                                                               REX D. DAVIS
                                                                               Chief Justice

Before Chief Justice Davis
            Justice Vance and
            Justice Gray
Judgment reversed, injunction dissolved
Opinion delivered and filed January 19, 2000
Do not publish